**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**JEREMY D. JACKSON**                                                                                         **PLAINTIFF**

**v.**                                                 **CIVIL ACTION NO. 2:19-CV-130-KS-MTP**

**LOW CONSTRUCTION GROUP, LLC,** *et al.*                                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This case arises from a motor vehicle accident. A piece of equipment fell off Defendants' truck and landed on Plaintiff's vehicle. Defendants admitted liability. Plaintiff claims that he was permanently injured, and he designated experts to testify at trial in support of his claim for damages. Defendants filed motions to exclude the testimony of two of Plaintiffs' experts.

For the reasons below, the Court **denies** Defendants' Motion to Strike [59] the supplemental expert report from Jeannie Lillis, **grants in part and denies in part** the Motion to Exclude [46] the expert testimony of Jeannie Lillis, and **grants in part and denies in part** the Motion to Exclude [44] the expert testimony of Bill Brister. The Court grants the motions as to any opinion testimony from Brister and Lillis concerning medical causation, the need for future medical treatment, the cost of future medical treatment, or Plaintiff's prognosis, but the Court denies them in all other respects.

### I. MOTION TO STRIKE SUPPLEMENTAL REPORT [59]

In response to Defendants' Motion to Exclude [46] the expert testimony of

Jeannie Lillis, Plaintiff's vocational expert, Plaintiff presented a supplemental expert report. Defendants then filed a Motion to Strike [59] the supplemental report, arguing that it was untimely.

Rule 26 provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. FED. R. CIV. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case," the party must also provide a written report prepared and signed by the expert witness. FED. R. CIV. P. 26(a)(2)(B). Among other things, the report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii).

"A party must make these disclosures at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(D). Local Rule 26 provides that a "party must make full and complete disclosure as required by FED. R. CIV. P. 26(a) . . . no later than the time specified in the case management order." L.U.Civ.R. 26(a)(2). Additionally, "[t]he parties must supplement these disclosures when required under Rule 26(e)." FED. R. CIV. P. 26(a)(2)(E).

"[A] party is required to supplement its expert disclosures if the court so orders or if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in

writing." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 570, n. 42 (5th Cir. 1996) (quoting FED. R. CIV. P. 26(e)(1)). "[T]he party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e)(2). Local Rule 26 provides that a "party is under a duty to supplement disclosures at appropriate intervals under Fed. R. Civ. P. 26(e) and *in no event later than the discovery deadline* established by the case management order." L.U.Civ.R. 26(a)(5) (emphasis added).

In summary, Plaintiff's expert designations were due on or before July 15, 2020. *See* Amended Case Management Order [34], at 1. Any supplements to the designations or expert reports were due on or before the discovery deadline of October 15, 2020, *id.*, unless they were otherwise made known to Defendants during discovery. FED. R. CIV. P. 26(e)(1)-(2); L.U.Civ.R. 26(a)(5).

Here, it is undisputed that Plaintiff served Lillis's supplemental report well after the discovery deadline. Plaintiff argues, though, that the supplemental report contains no new opinions. Rather, he contends that she clarified her position on an issue raised by Defendants in their motion to exclude her testimony. The Court will assume, for the purpose of addressing the present motion, that the supplement was untimely.

Rule 37 provides: "If a party fails to provide information or identify a witness

3

as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). When determining whether to strike a witness's testimony for a party's failure to disclose it, the Court considers the following factors:

> (1) the importance of the witnesses' testimony;
>
> (2) the prejudice to the opposing party of allowing the witnesses to testify;
>
> (3) the possibility of curing such prejudice by a continuance; and
>
> (4) the explanation, if any, for the party's failure to comply with the discovery order.

*Sierra Club*, 73 F.3d at 572.

First, the Court finds that the testimony at issue is important, in that it supports Plaintiff's claim for damages. Defendants argue that the testimony's importance only underscores the need to timely disclose it, and, therefore, this factor should weigh in favor of exclusion. Defendants are mistaken. The Fifth Circuit has explained that the importance of the untimely disclosed expert testimony is properly weighed against exclusion. *See, e.g. Betzel v. State Farm Lloyds*, 480 F.3d 704, 707-08 (5th Cir. 2007); *see also Ronaldo Designer Jewelry, Inc. v. Cox*, 2020 WL 1124742, at *3 (N.D. Miss. Mar. 6, 2020).

Next, the Court finds that Defendants would not be prejudiced by the Court's consideration of Lillis's supplemental report, in that the report contains no

4

substantive new opinions. Rather, Lillis briefly responded to an argument presented in Defendants' pending Motion to Exclude [46] her testimony. Specifically, she explained that although she used an incorrect date for the termination of Plaintiff's employment by Howard Industries, it had no bearing on her conclusions regarding his ability to work in the future. Lillis also briefly cited new medical records from services provided after the close of discovery, and opined that these treatments likewise supported her prior conclusions. In all, the supplement is less than one full page of text, and it does not substantively alter Lillis's previously disclosed opinions.

Finally, the Court finds that Plaintiff has a satisfactory explanation for waiting until now to disclose the supplemental report: Lillis responded to arguments raised in Defendant's pending Motion to Exclude [46] her testimony, and Plaintiff received more health care after the close of discovery.

For these reasons, the Court finds that the relevant factors weigh against exclusion of Lillis's supplemental report. The Court **denies** Defendants' Motion to Strike [59].

## II. MOTION TO EXCLUDE TESTIMONY OF JEANNIE LILLIS [46]

Defendants filed a Motion to Exclude [46] the testimony of Plaintiff's vocational expert, Jeannie Lillis, in its entirety. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence

>or to determine a fact in issue;
>
>(b) the testimony is based on sufficient facts or data;
>
>(c) the testimony is the product of reliable principles and methods; and
>
>(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Therefore, "when expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997).

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court provided a nonexclusive list of "general observations intended to guide a district court's evaluation of scientific evidence," including: "whether a theory or technique can be (and has been) tested, whether it has been subjected to peer review and publication, the known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, as well as general acceptance." *Watkins*, 121 F.3d at 989 (punctuation omitted).

>Not every guidepost in *Daubert* will necessarily apply . . . , but the district court's preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue is no less important.

*Id.* at 990-91 (punctuation omitted).

Expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz v. Brush Eng'red Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). It "must be reliable at each and every step or it is inadmissible. The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). "Overall, the trial court must strive to ensure that the expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

But the Court's role as gatekeeper is not meant to supplant the adversary system because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The Court should focus solely on the proposed expert's "principles and methodology, not on the conclusions that they generate." *Id.* at 595. But "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence connected to existing data only by the *ipse dixit* of the expert." *GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In summary, the proponent of expert testimony must demonstrate that the proposed expert is qualified, that the testimony is reliable, and that it is relevant to

a question of fact before the jury. *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). The proponent must prove these requirements "by a preponderance of the evidence." *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

### A.  *Insufficient Fats or Data*

First, Defendants argue that Lillis's opinions are unreliable because they are based on insufficient facts or data. Rule 702 specifically requires that an expert's testimony be based upon sufficient facts or data. FED. R. EVID. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation – i.e. good grounds, based on what is known." *Daubert*, 509 U.S. at 509 (punctuation omitted). "Where an expert's opinion is based on insufficient information, the analysis is unreliable." *Paz*, 555 F.3d at 388; *see also Seaman*, 326 F. App'x at 725. Therefore, expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz*, 555 F.3d at 300. "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all cases mandatory." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013).

Accordingly, "a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007). However, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be

left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). "[E]xpert opinions that overlook certain data are not typically excluded on that basis." *Gulf Restoration Network v. Oscar Renda Contracting, Inc.*, 2018 WL 6579171, at *2 (S.D. Miss. Dec. 13, 2018) (citing *Moss v. Ole South Real Estate, LLC*, 933 F.2d 1300, 1307 (5th Cir. 1991)). The Court should admit the testimony unless it is "wholly unreliable." *Rosier v. Wood Towing, LLC*, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *14.38 Acres of Land*, 80 F.3d at 1077).

    Defendants argue that Lillis's opinions regarding Plaintiff's future job prospects are unreliable because they are premised upon Lillis's mistaken belief that Plaintiff was employed at the time of the accident, when he had actually been fired from his job at Howard Industries over a month beforehand. The Court disagrees. This single omitted piece of information – that Plaintiff was fired a month before the accident – does not undermine the entire basis of Lillis's opinions. She noted his education, social background, work history, current medical prognoses, scoring on certain occupational tests, and job skills. Omission of the fact that he was fired once, a month before the subject accident, does not render her opinion wholly unreliable and, therefore, inadmissible. Rather, it goes to the weight of her testimony. *See Moore*, 547 F. App'x at 516 ("[A] few scattered errors in an expert report are not necessarily grounds for exclusion."); *see also Marsh v. Wallace*, 2008 WL 4000809, at *6-*7 (S.D. Miss. Aug. 22, 2008).

## B.   *Qualification*

Next, Defendants argue that Lillis offered numerous opinions that she is not qualified to give. Rule 702 provides that an expert may be qualified by "knowledge, skill, experience, training, or education . . . ." FED. R. EVID. 702. Expert testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). However, a proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

As noted above, Defendants argue that Lillis offered numerous opinions outside her area of expertise. The Court will not list each example cited in Defendants' briefing, but they generally argue that Lillis is not qualified to testify as to medical causation, the need for future medical treatment, the cost of future medical treatment, or Plaintiff's prognosis. In response, Plaintiff does not dispute that Lillis is not qualified to provide expert testimony in these areas, but Plaintiff argues that any such opinions are restatements of opinions provided by his doctors.

Lillis is plainly unqualified to provide any opinion testimony regarding medical causation, the need for future medical treatment, the cost of future medical

10

treatment, or Plaintiff's prognosis. She is a certified and licensed vocational rehabilitation counselor, not a doctor. Plaintiff has not cited any knowledge, skill, experience, training, or education that would qualify her to provide expert testimony on medical issues. Therefore, to the extent her report includes such opinions, they are excluded. However, Lillis is free to cite other sources of information in support of her vocational evaluation, such as Plaintiff's medical records or reports from his treating physicians. The Court declines to sift through Lillis's report line-by-line and pick out the places where she crossed the line from permissible citation to impermissible opinion testimony, but several sections of her report cited in Defendants' briefing would likely be inadmissible at trial as worded. If there are any lingering disputes on this issue at trial, the Court will address them on a case-by-case basis.

For these reasons, the Court grants Defendants' motion to exclude any opinions from Lillis regarding medical causation, the need for future medical treatment, the cost of future medical treatment, or Plaintiff's prognosis. The Court does not believe, though, that Lillis's permissible opinions are inextricably intertwined with the impermissible ones, and it declines to exclude all her testimony.

### C.   *Methodology*

Finally, Defendants argue that Lillis did not apply reliable principles and methods from her field of expertise in forming her opinions regarding Plaintiff's employment prospects. Specifically, Defendants contend that although Lillis administered certain vocational rehabilitation evaluations and provided their results

11

in her report, she did not explain how the results applied to Plaintiff's specific employee profile. Defendants also argue that Lillis did not sufficiently explain some of her conclusions. For example, she asserted that Plaintiff would be "extremely limited in what occupations he will be capable of performing," but she did not explain why. In summary, Defendants argue that Lillis merely summarized the opinions of Plaintiff's medical experts and offered conclusory opinions regarding Plaintiff's vocational prospects.

Lillis conducted multiple interviews of Plaintiff. Exhibit A [46-2], at 1, 7. She elicited information about his medical, work, and educational history. *Id.* at 1-2, 5, 8. She administered the "Woodcock Johnson Test of Achievement" and the "COPS Interest Inventory," and she included the tests' results in her report. *Id.* at 3-4. She listed Plaintiff's relevant work skills. *Id.* at 4. She noted the work restrictions imposed by his treating physicians, *id.* at 8, and she recited Plaintiff's subjective descriptions of his own pain. *Id.* at 9. Finally, she noted certain types of jobs that Plaintiff would not be able to perform because of his physical restrictions. *Id.* at 9-10.

This is sufficient explanation to satisfy Rule 702. To be sure, Lillis could have provided more explicit details, connecting more dots between the supporting information and her conclusions. However, the Court is satisfied that she has employed "the same level of intellectual rigor that characterizes the practice of an expert in [her] relevant field." *Valencia*, 600 F.3d at 424. Indeed, the Court notes that Defendants' own vocational expert, Bruce Brawner, did not provide a substantially

12

more detailed report than Lillis. *See* Exhibit 4 to Response [53-4]. In the Court's experience, both Lillis and Brawner provided reports well within the norm for proposed vocational rehabilitation experts. They may not have explained the rationale behind their opinions as thoroughly as they could have, but it is clear they had one. Therefore, the Court denies this aspect of Defendant's motion.

### III. MOTION TO EXCLUDE TESTIMONY OF BILL BRISTER [44]

Defendants also filed a Motion to Exclude [44] the testimony of Plaintiff's economic expert, Bill Brister.

### A.  *Base Earning Level*

First, Defendants argue that Brister's calculation of Plaintiff's base earning level was based on the mistaken assumption that Plaintiff was employed at the time of the accident when, in fact, Plaintiff had been fired from his job at Howard Industries a month beforehand. Defendants also argue that Brister mistakenly assumed that Plaintiff stopped working because of the accident when, in fact, he was terminated before it happened.

As noted above, "questions relating to the bases and sources of an expert's opinion [generally] affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration." *14.38 Acres of Land*, 80 F.3d at 1077. "[E]xpert opinions that overlook certain data are not typically excluded on that basis." *Gulf Restoration Network*, 2018 WL 6579171 at *2. Generally, the Court will admit expert testimony unless the lack of supporting data renders it

13

"wholly unreliable." *Rosier*, 2009 WL 982659 at *1. Brister's omission of one data point – Plaintiff's termination – does not render his opinion wholly unreliable and, therefore, inadmissible. Rather, it goes to the weight of the testimony. Even if Plaintiff was fired a month before the accident, his salary before he was fired is relevant to determining his potential future earnings.[1]

## B. *Future Medical Expenses*

Defendants also argue that Brister provided opinions regarding Plaintiff's future medical expenses, and that the only support for these opinions was Jeannie Lillis's expert report. Defendant argues that neither Brister nor Lillis is qualified to calculate future medical expenses. However, Defendant admits that Brister based his estimate of future medical expenses on recommendations provided by Plaintiff's treating physicians, Ronald Segura and Jarrold Harrell.

First, to the extent Defendants argue that Brister is unqualified to provide opinions regarding medical causation, the need for future medical treatment, the cost of future medical treatment, or Plaintiff's prognosis, the Court agrees for the same reasons provided above with regard to Lillis. Brister is not a medical expert, and he is not qualified to provide opinions on such matters.

However, Brister may rely on the information provided by Plaintiff's medical experts and include their estimate of such costs in his analysis. Defendants' chief

---

[1] The Court also notes that Brister calculated Plaintiff's base income level at $42,090 per year, and Defendants' expert, Gerald Lee, calculated it at $41,935 per year. There is no significant difference in these conclusions, despite Defendants' argument that Brister's failure to account for Plaintiff's termination renders his opinions wholly unreliable.

14

complaint about Brister's estimate is that the doctors said Plaintiff *may* require future treatment, and Brister included future medical expenses in his estimate without qualification. But, given the doctor's opinions, there is clearly some reliable factual basis for the inclusion of such expenses in Brister's estimate. Therefore, this issue goes to the weight of the testimony, rather than its admissibility.

### C. *Loss of Household Services*

Brister provided three different estimates of the value of Plaintiff's lost future household services, based on three different potential levels of disability. Defendants argue that all three estimates are unreliable because Brister did not provide details as to specific household services that Plaintiff actually performs in his daily life, or address demographic questions such as Plaintiff's marital status, whether he has children, or whether he cohabitates. Defendants also complain that Brister provided no reason for choosing disability levels of 100%, 75%, and 50%, and they note that Brister admitted that Plaintiff's disability level was unclear.

The appendices attached to Brister's report included "United States Life Tables" published by National Vital Statistics Reports, which provided the national average life expectancy for a man in the United States. Exhibit 2 [44-2], at 21. Brister also included a document titled "The Dollar Value of a Day," published by Economic Demographers, which provides tables of household production value broken down into various categories. *Id.* at 22-23. Therefore, while Brister could have provided more detail in his report, his opinions are not wholly unsupported. Indeed, this Court

15

has previously admitted expert opinions regarding the value of household services based on such sources. *Dallas v. Premier Vehicle Transp., Inc.*, 2017 WL 3623750, at *3 (S.D. Miss. Aug. 23, 2017); *Ashford v. Wal-Mart Stores, LP*, 2013 WL 152853, at *5 (S.D. Miss. Jan. 15, 2013). Moreover, before Brister's opinion regarding the value of such services will be admitted, Plaintiff will have to lay an adequate foundation in evidence that he will actually incur such damages.

Finally, Brister's admission that Plaintiff's disability level is unclear does not render his entire opinion unreliable. A certain level of speculation is always involved in economic projections like these, and that lack of clarity can cut both ways at trial, depending on how the jury weighs the competing evidence. The inherently speculative nature of projected future losses goes to the weight of Brister's testimony, rather than its admissibility,[2] and Defendants will be free to cross-examine him at trial.

## IV. CONCLUSION

For these reasons, the Court **denies** Defendants' Motion to Strike [59] the supplemental expert report from Jeannie Lillis, **grants in part and denies in part** the Motion to Exclude [46] the expert testimony of Jeannie Lillis, and **grants in part and denies in part** the Motion to Exclude [44] the expert testimony of Bill Brister. The Court grants the motions as to any opinion testimony from Brister and Lillis

---

[2] *See Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 193 (5th Cir. 1991) (recognizing inherently speculative nature of future wage loss, and holding that credibility choices and resolving conflicting evidence are the task of the fact-finder).

16

concerning medical causation, the need for future medical treatment, the cost of future medical treatment, or Plaintiff's prognosis, but the Court denies them in all other respects.

SO ORDERED AND ADJUDGED this 1st day of March, 2021.

                                                 /s/   Keith Starrett
                                                            KEITH STARRETT
                                     UNITED STATES DISTRICT JUDGE